CHARLES BURHANS, appellant,

*v.*

JOHN H. HINDLE et al., respondents.

Complainant, with his two brothers, was the owner of a tract of land which was sold by commissioners in partition proceedings, and bought in the name of A, who gave his bonds and mortgages on the premises for part of the purchase-money, and complainant accepted part of the bonds for his share of the proceeds. Defendants contributed to A part of the purchase-money, and thereupon A executed a deed to the effect that he held the premises in trust for them and himself according to their respective interests. A afterwards

obtained his discharge in bankruptcy, and complainant, after foreclosing A's mortgage, sold the premises covered thereby, leaving a deficiency.—*Held,* that he could not compel defendants to pay such deficiency.

On appeal from a decree dismissing the bill advised by Vice-Chancellor Van Fleet.

The bill was filed to obtain a decree for deficiency of proceeds of mortgaged premises to satisfy mortgages. The complainant, having foreclosed his mortgages, sues to recover his deficiencies from parties who were not parties to either the bonds or mortgages. The case is precisely the same, in all respects, as the case of *Burhans* v. *Beam, 9 Stew. Eq. 497, 10 Stew. Eq. 593,* except that, in the last-mentioned case, the complainant, John Burhans, was an infant at the time of the transaction upon which his claim for relief was based. The present case of Charles Burhans was argued upon the printed book of testimony taken in the former case. Inasmuch as the facts of the case were fully set forth in the opinion of the vice-chancellor (*9 Stew. Eq. 497*), and the opinion of the court of errors and appeals (*10 Stew. Eq. 593*), it seems to be entirely unnecessary to reprint the pleadings or evidence in this case. There is very little controversy as to the facts. The following is a brief statement of the main facts upon which the complainant, Charles Burhans, bases his claim against the defendants:

In March, 1873, William, Charles and John Burhans, were tenants in common of six tracts of land in Passaic county. On March 16th, 1873, the Passaic orphans court, on application of Charles Burhans, appointed commissioners to divide these lands, under the act (*Rev. p. 798*). The commissioners were James Van Blarcom (a lawyer, now deceased), Garret I. Blauvelt and Peter Doremus. Four of the six tracts were divided and the other two ordered to be sold. The commissioners, without any authority from any court, determined to lay out one of these tracts in lots and sell them, largely on credit—offering to take bonds and mortgages from the purchasers for seventy per cent. of the purchase-money. The owners (or rather the two who

were of age) appear not to have objected to this arrangement. The sale was advertised by maps and circulars, stating the terms, for June 3d, 1873. On that day a large sale of lots was made to various parties, and the sale was then adjourned to July 3d, when the remainder were sold.

At one or both of these sales lots were struck off to the defendant Hoxsey, and others to Hindle, the respondent, who also acted as auctioneer. It appears that Hoxsey bought for himself and John J. Brown and John R. Beam, under an arrangement made before the sale was held.

Hindle appears to have bought for himself. After both sales were held, a new arrangement was made, or, if Mr. Brown is correct, his agreement with Beam and Hoxsey, made prior to the sale, was enlarged, and new parties let in. At any rate, the bids of Hindle, and those of Hoxsey, acting for himself and others, were pooled, and all were agreed to be considered as the bids of John R. Beam, a young man of small means, who afterward became bankrupt. The commissioners, who evidently did not, in that day of excitement in real estate, consider the effect of their conduct, consented to this arrangement, but their *cestuis que trustent*, the owners, knew nothing of it until after it had been fully carried out. The commissioners accordingly reported the sale to the orphans court as if made for cash to John R. Beam, and the sale to him was confirmed. Mr. Beam paid the thirty per cent. in cash and gave his individual bonds for the seventy per cent. secured by mortgages on the lots sold. The aggregate amount of the sale thus shifted on to Mr. Beam was $13,136, of which he paid $3,940.80 in cash, and gave his bonds and mortgages for the balance. Nineteen of the deeds to Mr. Beam from the commissioners, and thirteen mortgages back from him to them, were put in evidence. These papers show the transaction. Mr. Beam, in fact, had only a one-eighth interest in the purchase. The parties to the pooling scheme were the five respondents, and they contributed to the thirty per cent. paid in cash, in proportion to their interest, as follows:

John R. Beam, one-eighth; Libbie Benner, one-eighth; Thomas D. Hoxsey, one-fourth; John J. Brown, one-fourth;

John H. Hindle, one-fourth. The records of the orphans court offered in evidence show, that the sale went through as a cash sale, as the law requires, the court having no information of the substitution of credit for cash, and being falsely informed that the sale had been made to John R. Beam. After the sale Mr. Beam made a declaration of trust to all five parties in the scheme, setting forth their respective interests in the lands. This instrument is dated August 11th, 1873, and is as follows:

"To all to whom these presents shall come, I, John R. Beam, of the City of Paterson, County of Passaic, State of New Jersey, send greeting: Whereas, James Van Blarcom, Garret I. Blauvelt and Peter Doremus, commissioners appointed by the Orphans Court, in the County of Passaic and State of New Jersey, in and by their deeds, dated the Eleventh day of August, in the year of our Lord one thousand, eight hundred and seventy-three, and recorded in the County Clerk's Office, of Passaic County, in Book X 4 of deeds, on pages 202 &c., 204 &c., 206 &c., 207 &c., 209 &c., 211 &c., 212 &c., 216 &c., 217 &c., 219 &c., 220 &c., 222 &c., 224 &c., 225 &c., 227 &c., 228 &c., 230 &c., 232 &c., 233 &c., did convey to me, the said John R. Beam certain tracts and parcels of land and premises situate lying and being in the City of Paterson, in the County of Passaic and State of New Jersey, as by reference to said deeds will more fully appear:—And whereas I have made, executed and delivered to the said James Van Blarcom, Garret I. Blauvelt and Peter Doremus, commissioners as aforesaid, purchase money mortgages on said tracts to secure to them a part, that is to say, ninety-one hundred and ninety-five dollars and twenty-five cents, of the consideration money of the said sale to me—And whereas the balance of said consideration money, to wit: the sum of thirty-nine hundred and forty dollars and eighty cents, has been paid in cash to the said commissioners as aforesaid, in the following proportionate sums or shares, that is to say, one-eighth part by myself, John R. Beam, one-eighth part by Libbie Benner, one-fourth part by Thomas D. Hoxsey, one-fourth part by John J. Brown and one-fourth part by John H. Hindle,—Now therefore, know ye that I, John R. Beam, do hereby acknowledge and declare that I hold the said lands only in trust for the said John R. Beam, Libbie Benner, Thomas D. Hoxsey, John J. Brown and John H. Hindle, for them and each of them, their heirs and assigns forever, in the proportionate sums or shares above mentioned, and in trust to sell and dispose of the said property for the uses and purposes in the manner following, that is to say:—

"*First.* Out of the proceeds of such sale or sales of the said land to pay said mortgages and the interest thereon and to satisfy the same; and

"*Second.* To pay over the surplus that may remain of the price obtained from such sale or sales, after deducting all costs, charges and expenses attending the ownership and disposition of said lands, to the said above named parties, their heirs and assigns, in proportion of their respective shares, as above

stated. And I do hereby covenant, promise and agree to and with the above named parties their heirs and assigns, for myself, my heirs, executors, administrators and assigns, that I will hold the said premises in trust, as aforesaid, for the said parties, their respective heirs and assigns and will sell the same in case it shall be deemed advisable so to do, the consent of a majority in number and interest of the above named share holders being sufficient to determine upon the advisability of such sale or sales, in the manner above more particularly set forth, and for no other purpose and in no other manner.

"In witness whereof, I have hitherto set my hand and seal this Eleventh Day of August, in the Year of Our Lord, One Thousand, Eight Hundred and Seventy-Three.

"JOHN R. BEAM. [L. s.]

"Signed sealed and delivered in the presence of
"JOHN S. BARKALOW."

On November 15th, 1873, after the orphans court had ordered a distribution, Charles Burhans, and Augustus Burhans, who was also the guardian of John Burhans, went to the office of Mr. Van Blarcom, one of the commissioners, to get their shares. The commissioner offered them bonds of John R. Beam for the $9,195.20. Charles and Augustus Burhans objected to these bonds, but finally took them.

The testimony of Charles Burhans, in regard to the interview with Mr. Van Blarcom, is as follows:

"*Q.* Now state what conversation occurred between you and Mr. Van Blarcom about the way in which these mortgages were made.

"*A.* On the 15th of November, 1873, I was summoned to Mr. Van Blarcom's office to make a settlement of the estate, of my portion, and also the guardian of John Burhans, the minor, was summoned at the same time; the guardian and I went there; Mr. Van Blarcom brought out the papers and mortgages of these defendants, and of other parties who bought at the sale; they were passed over to me, one by one, and when we came to this batch of John R. Beam and other defendants, I objected to it by saying: 'Mr. Van Blarcom, how is this that John R. Beam has bought this land? He didn't bid at the sale and didn't buy any lots.' He said: 'It was done for the convenience of the other parties, inasmuch as at the time they should want to sell, most of them, being married men, would have wives who would have a right of dower in the property, and John R. Beam, being a young man and unmarried, would be the best party to hold it in trust for them, so that, at the time they wanted to sell, it would only be one party to sell—one party to sell or assign—and they would not have to hunt up their wives or the men, who might be in different towns.' I told him 'I didn't think it was right.' He said 'it was per-

fectly safe, and said it was just the same way as I would do myself,' and, of course, not being a lawyer, and not being thoroughly posted in the matters, I took them, with that objection.

"*Q.* Proceed.

"*A.* One thing I will say, we were never consulted in the matter at all by the commissioners about it; they done all the business themselves, and just summoned us there to make a settlement.

"*Q.* Was anything said by Mr. Van Blarcom about the relation of the gentlemen interested in the property conveyed to Mr. Beam in the transaction?

"*A.* Nothing further than that they were the parties who bought, and they should have been made out to them.

"*Q.* The mortgages should have been given by them, you mean?

"*A.* Yes, sir.

"*Q.* You understand that?

"*A.* Yes, sir.

"*Q.* And then what did he say to that?

"*A.* Then he went on to state just the same as I have stated before, that they were made out for convenience' sake."

After the mortgages were received by Charles Burhans, in the manner above stated, the interest was contributed *pro rata* by the equitable owners, John R. Beam, Libbie Benner, Thomas D. Hoxsey, John J. Brown and John H. Hindle, in proportion to their respective interests. The said John R. Beam afterwards was discharged as a bankrupt, upon his own petition. He pleaded his discharge in the former suit of John Burhans, and his plea was sustained. The said Libbie Benner was made defendant in the suit of John Burhans, but the decree in that case held that she was not liable, having had no knowledge of, or participation in, the transaction upon which the liability of the other defendants was placed. The complainant, Charles Burhans, having exhausted his remedy against the land by foreclosure of his mortgages, and having no recourse to John R. Beam on the bonds, prosecutes this present suit against the other equitable owners, Hindle, Brown and the executrix of Hoxsey, to have them declared liable for the amount still due upon his bonds and mortgages.

It will be seen from the foregoing, that the question in this present case is, whether Charles Burhans, by reason of his having been of full age at the time of the transaction under consideration, is to be denied the relief which, in the former case, was

Finnegan *v.* Tinnock.

granted to his brother John, who was then a minor. In other words, eliminating the fact of the complainant's infancy, is the right to a decree for deficiency eliminated at the same time? The petition of appeal complains of the decree because it dismissed the bill.

The answer to the petition of appeal is in the usual form.

*Mr. Eugene Stevenson,* for the appellant.

*Mr. John W. Griggs,* for the respondents.

PER CURIAM.
This decree unanimously affirmed.